**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

---

| | | |
|---|---|---|
| **JAKE ELROD and ERIC JENKINS,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Docket No _______________** |
| **THE CITY OF SODDY-DAISY, TENNESSEE, a municipality,** | * | |
| **BURT JOHNSON, individually and in his official capacity as the City Manager for the City of Soddy-Daisy,** | * | **JURY DEMAND** |
| **BILLY PETTY, individually and in his official capacity as the Police Chief for the Soddy-Daisy Police Department;** | * | |
| **MIKE SNEED, individually,** | * | |
| **Defendants.** | * | |

---

# AMENDED COMPLAINT

---

**COMES NOW**, the Plaintiffs, Jake Elrod ("Lt. Elrod" or "Elrod") and Eric Jenkins ("Capt. Jenkins" or "Jenkins"), by and through their attorneys, Davis & Hoss, P.C., and hereby file this Amended Complaint for damages against the City of Soddy-Daisy, Tennessee, a municipality, Burt Johnson ("Johnson" or "City Manager Johnson"), individually and in his official capacity as the City Manager of the City of Soddy-Daisy, Billy Petty ("Chief Petty" or "Petty"), individually and in his official capacity as the Police Chief for the Soddy-Daisy Police Department, and Mike

Sneed ("Former Chief Sneed" or "Sneed" or "Chief Sneed"). The Plaintiff would show unto the Court as follows:

**INTRODUCTION**

1. This is an action by the Plaintiffs for constitutional violations and violations of Tennessee state law by the Defendants as a result of the termination of the Plaintiffs' employment by the Defendants. This action is brought pursuant 42 U.S.C. § 1983, the Tennessee Public Protection Act (TPPA), Tennessee Public Employee Political Freedom Act (PEPFA), Civil Conspiracy under Tennessee law, and claims brought pursuant to vicarious liability and/or the doctrine of *respondeat superior*.

2. Plaintiffs were employed at the Soddy-Daisy Police Department ("SDPD") and were public employees for the City of Soddy-Daisy, Tennessee at all relevant times. All acts and omissions occurred in Hamilton County, Tennessee and the Eastern District of Tennessee.

3. Plaintiffs aver that the Defendants terminated the Plaintiffs in retaliation for exercising their constitutional rights to freedom of speech, exercising their duties to enforce the laws of the state of Tennessee, for communicating with elected officials in Hamilton County about public concerns, and for testifying about those concerns in a court of law in Hamilton County Criminal Court after the Soddy-Daisy Police Department covered up and intentionally refused to disclose the untruthfulness of an arresting Soddy-Daisy Police officer during a during an internal affairs investigation in a criminal proceeding in *State of Tennessee v. Justin Whaley*.

**PARTIES, JURISDICTION, & VENUE**

4. Jake Elrod is a resident of Hamilton County, Tennessee. Lt. Elrod served the City of Soddy-Daisy and the SDPD for seventeen (17) years. He worked as a dispatcher, a patrol officer, a Detective, and a Lieutenant during that time. He was promoted to Lieutenant in 2021

and at all relevant times, performed his duties as a Lieutenant for SDPD until his termination on July 31, 2024.

5.      Eric Jenkins is a resident of Hamilton County, Tennessee. Capt. Jenkins served the City of Soddy-Daisy and the SDPD for fifteen (15) years. He worked as a patrol officer, a Lieutenant, and a Captain during that time. He was promoted to Captain on or about March 1st, 2024 until his termination on July 31, 2024.

6.      Burt Johnson, at all relevant times to this Complaint, served as the City Manager for the City of Soddy-Daisy, Tennessee. Upon information and belief, Johnson is a resident of Hamilton County which is located in the Eastern District of Tennessee and can be served at 9835 Dayton Pike, Soddy-Daisy, TN 37379.

7.      Billy Petty became Chief of Police at the SDPD in or around January 2024 and is the current Chief of Police. Before becoming Chief, he was a Captain within the SDPD and, upon information and knowledge, was second in command at the SDPD at other relevant times in the complaint. Upon information and belief, Petty is a resident of Hamilton County, which is located in the Eastern District of Tennessee and can be served at 9835 Dayton Pike, Soddy-Daisy, TN 37379.

8.      Mike Sneed served as Chief of Police up and until January 2024. On January 5, 2024, Mike Sneed retired from the SDPD. He is a resident of Rhea County, which is located in the Eastern District of Tennessee. All acts committed by Chief Sneed occurred in Hamilton County, Tennessee and the Eastern District of Tennessee.

9.      The City of Soddy-Daisy is a political sub-division of the State of Tennessee and was, at all relevant times, organized and existing under the laws of Tennessee. The City of Soddy-Daisy operates the SDPD and employs and/or employed Burt Johnson, Billy Petty, Mike Sneed,

Lt. Elrod, and Capt. Jenkins at all material times. The City of Soddy-Daisy can be served at 9835 Dayton Pike, Soddy-Daisy, TN 37379. The City of Soddy-Daisy operates within Hamilton County, Tennessee and the Eastern District of Tennessee.

10. All acts and omissions alleged in this Complaint occurred in Hamilton County, Tennessee which is located in the Eastern District of Tennessee. This case presents federal question jurisdiction which includes federal constitutional violations under 42 U.S.C. § 1983. Jurisdiction and venue are proper with this Court pursuant to 28 U.S.C. § 1331. Further, this Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

**FACTS**

11. The allegations in Paragraphs 1-10 are incorporated herein by reference.

12. In 2023, Lt. Elrod was a Detective, and the Lieutenant over investigations within the SDPD.

13. At that time, his regular scope and course of employment included large-scale felony investigations, narcotic investigations, federal drug conspiracy investigations, child sex crime investigations, etc.

14. In 2023, Lt. Elrod also conducted the internal affairs investigations for the SDPD and any other internal investigations that were requested by the executive command of the SDPD which included Chief Sneed and Petty. Further, Lt. Elrod as well as Capt. Jenkins performed training functions within the SDPD and trained younger officers regarding testifying in Court and making disclosures to their local District Attorney's office under *Brady* and *Giglio*.

**A. First Wright investigation.**

15. In February 2023, Capt. Jenkins[1] received information from another SDPD officer about a Seargeant within the SDPD. Specifically, a Soddy-Daisy citizen made a complaint about Sgt. Jeremy Wright ("Wright" or "Sgt. Wright") of the SDPD. The citizen-complainant reported that Wright had or was having inappropriate relationships with underage individuals.

16. Capt. Jenkins reported this information to Lt. Elrod because of Lt. Elrod's position as the Lieutenant over SDPD's investigations and his role in internal affairs investigations within the SDPD.

17. Lt. Elrod and Capt. Jenkins reported the complaint about Wright to their Chief of Police at the time, Mike Sneed. Chief Sneed ordered them to interview the citizen-complainant who made the complaint.

18. The citizen-complainant reaffirmed to Lt. Elrod and Capt. Jenkins the initial complaint. Specifically, the citizen-complainant reported that Wright had or was having inappropriate relationships with underage individuals.

19. Lt. Elrod and Capt. Jenkins reported back to Chief Sneed this information. Chief Sneed informed Lt. Elrod and Capt. Jenkins that he had already referred the case to the Hamilton County Sheriff's Office ("HCSO") for them to conduct a criminal investigation into Wright.

20. Neither Chief Sneed, Petty, as second in command, nor the SDPD took any administrative or employment action against Wright and allowed Wright to continue to patrol the streets and perform functions of a law enforcement officer, which included Wright having access to minors and local schools in the Soddy-Daisy community.

[1] In February of 2023, Captain Jenkins was a Lieutenant of the SDPD and was, at that time, the same rank as Lt. Elrod. Capt. Jenkins was promoted to Captain in or around March 1, 2024.

21.     The HCSO assigned Det. Stockman to conduct the criminal investigation into Wright.

22.     Det. Stockman interviewed the original Soddy-Daisy citizen-complainant and learned that Wright had been intimate with this individual.  Det. Stockman also obtained the citizen-complainant's cell phone and downloaded its contents which revealed text messages between Wright and the citizen-complainant.

23.     Specifically, the text messages between Wright and the citizen-complainant were alarming.  The text messages sent by Wright to the citizen-complainant included and described Wright's sexual fantasies about committing sex acts with minors. The text messages were alarming to Det. Stockman because of Wright's position as a current law enforcement officer in the community and his access to minors and schools in the Soddy-Daisy community.

24.     The content(s) of the text messages are perverse, grotesque, and contain sexually graphic descriptions of sex acts with minors.

25.     Plaintiffs, as well as the SDPD, are currently in possession of these text messages. Plaintiffs will provide these text messages to the Court at the appropriate time or upon request. However, due to fact that these text messages involve minors and sexually graphic and grotesque depictions of sexual conduct with minors, Plaintiffs respectfully decline enumerating, listing, and describing each text message in this Complaint.

26.     Any reasonable person reading these text messages would conclude that Wright and the citizen-complainant were discussing a variety of perverse, grotesque, and graphic sexual fantasies of sex acts with minors.  The texts raised questions as to whether Wright actually fantasized about sex acts with minors or whether he had committed sex acts with minors.

27.     Further, Det. Stockman discovered that Wright had also sent to the citizen-complainant nude images of himself from his phone which included a picture or picture(s) of his penis.

28.     Det. Stockman, although alarmed that a law enforcement officer would send the type of text messages described above, ultimately determined that there was no violation of the Tennessee criminal code because Wright and the citizen-complainant were consenting adults and fantasizing about having sex with minors is not a per se violation of the Tennessee criminal code.

29.     Det. Stockman was not determining whether Wright's conduct violated any policy within the SDPD which was a separate and distinct issue.

30.     Lt. Elrod contacted HCSO Det. Stockman and learned the above information about HCSO's investigation into Wright and obtained copies of the citizen-complainant's cell phone download including the above described text messages and the naked pictures of Wright that Wright had sent to the citizen-complainant from his phone.

**B.     Second Wright Investigation.**

31.     On or about May 24, 2023, another SDPD officer notified Lt. Elrod of second incident involving Wright.  Specifically, Wright was alleged to have shown a nude photo of himself that exposed a portion of his penis to an adult female ("reporting adult female") and her underage cousin at a local fitness gym ("Planet Fitness").  The reporting adult female advised that Wright had recently responded to a call as a police officer and she recognized him as the individual who had shown them this photo some time ago, so she contacted law enforcement.

32.     Once Lt. Elrod was notified of this information, he reported the information to Chief Sneed who ordered him to investigate the information and to interview the reporting adult female and the underage cousin.

33.     On May 25, 2023, Lt. Elrod interviewed the reporting adult female.  She stated she was at Planet Fitness when she and her underage cousin ran into Wright at the gym.  She advised that they started talking and Wright showed her and her underage cousin a photo of himself that showed a before and after photo of his body.  At the time, Wright was allegedly training for an upcoming boxing match and had lost weight.  The reporting adult female informed Lt. Elrod that Wright's penis was in the photograph and it was shown to her cousin who was underage at the time.

34.     The reporting adult female further advised that she and her underage cousin did not want to see Wright's penis so they left Planet Fitness.

35.     The reporting adult female was hesitant to report it at the time because she had suffered prior sexual abuse and did not think that the SDPD would do anything about the allegation.

36.     Lt. Elrod contacted Hamilton County District Attorney General Coty Wamp ("General Wamp") and gave her the details of the complaint.  At all relevant times, General Wamp is an elected official in Hamilton County, Tennessee.

37.     Lt. Elrod and General Wamp both agreed there was not a clearly identifiable criminal charge to bring against Wright.  However, because there were possibly policy violations of the SDPD and the fact that this was the second allegation against Wright involving minor(s), Lt. Elrod continued with his investigation.

38.     On May 26, 2023, the following day, Lt. Elrod tried to contact the underage cousin but could not get her to return his calls.  When he contacted the reporting adult female again, she stated that she did not want to pursue the matter any further because Captain Petty was friends with Wright and would do anything to protect him.

39.     Lt. Elrod contacted Wright and asked him to come to his office for an interview about the complaint.

40.     Wright came to Lt. Elrod's office and Lt. Elrod informed Wright about the allegations and asked him what happened at the Planet Fitness.

41.     Wright admitted showing photographs to the reporting adult female and her cousin. However, Wright denied that his penis was in the photo(s) that were shown.

42.     Lt. Elrod asked Wright if he had any naked images of himself, like the one the reporting females described, on his phone.  Wright produced a side-by-side photo of himself standing in front of a mirror at Planet Fitness.  The picture had two (2) photos of Wright, one before his weight loss and one after.  The after picture showed Wright's physique, but only from his waist up, and did not show his pelvic area.  Lt. Elrod asked him specifically if he had any pictures of his penis on his phone and Wright responded, "no."

43.     Because of Det. Stockman's earlier investigation, Lt. Elrod knew about the contents of the download from the citizen-complainant's cell phones and knew that the download included naked pictures of Wright and his penis.  Specifically, Lt. Elrod knew that Wright previously had naked photos of himself and his penis on his phone and had used his phone to transmit those photos to the citizen-complainant.

44.     Lt. Elrod did not reveal to Wright his knowledge of the earlier investigation by Det. Stockman.  Wright advised Lt. Elrod that the side-by-side photo that he showed Lt. Elrod would be the only transition photo he would have shown a third-party.  He denied having any photos on his phone of his penis.

45.     After Lt. Elrod interviewed Wright, Wright left Lt. Elrod's office and walked into Lt. Jenkins' office which is in a separate building.  Wright, who was frustrated, told Lt. Jenkins

about the allegations explained to him by Lt. Elrod. Further, he told Lt. Jenkins "what Jake (Lt. Elrod) doesn't know is there was another picture and that one had my penis in it."

46.     Lt. Jenkins asked Wright, "[t]here was another picture?" And Wright responded, "Yeah, but I don't think I showed it to anybody."

47.     Wright left Capt. Jenkins' office and Capt. Jenkins went to Lt. Elrod's office and told him about this conversation with Wright. Lt. Elrod and Capt. Jenkins then went to Chief Sneed and reported Wright's untruthfulness to Chief Sneed.

48.     On June 6, 2023, Lt. Elrod spoke with Wright again.

49.     During this second interview, Wright admitted to Lt. Elrod of having the conversation with Lt. Jenkins but continued to deny showing the penis picture to anyone. Wright showed Lt. Elrod the second photo that Wright mentioned to Capt. Jenkins. This photo was the same side by side comparison photo, but the naked photo showed from Wright's knees and up, including his pelvic region. However, the picture had a black spot covering Wright's penis. Lt. Elrod noticed that when Wright showed him this photo, Wright had the photo in "edit" mode on his phone, indicating to Lt. Elrod that Wright had just recently added the black spot prior to their interview.

50.     The fact that Wright had two versions of the photo on his phone and lied to Lt. Elrod about having those two versions led Lt. Elrod to conclude that Wright was being untruthful with him. Lt. Elrod included his findings in a thorough report.

51.     After Wright was interviewed by Lt. Elrod a second time, Wright returned to Capt. Jenkins' office and said, "Dude, why'd you rat me out?" Capt. Jenkins told him, "Well, you lied. I can't hold that, I had to tell Jake (Lt. Elrod)." Wright replied, "Okay, I get it" and walked out of Capt. Jenkins' office.

52.     Later in June 2023, while in the parking lot of the SDPD, Capt. Jenkins ran into Wright again and asked, "Jeremy, why did you lie to Jake (Lt. Elrod)?"  Wright replied, "I don't know, man.  Scared."

53.     On July 6, 2023, Lt. Elrod finalized the written report of his findings.  His report addressed both investigations described above.  In his report, Lt. Elrod found that Wright potentially violated policy including SDPD's Sections 2.20 Conduct Off Duty.  He further documented Wright's statements to Capt. Jenkins which "contradicted" what Wright reported to Lt. Elrod.  He further detailed the misrepresentation in Wright's statements about the photos.  Lt. Elrod wrote that Wright "has expressed a desire to be with an underage sexual partner."  Lt. Elrod found that when Wright was alerted by the citizen complainant of her past sexual experiences with underage partners that Wright, instead of reporting the incident (which he would be required to do under Tennessee law), was sexually aroused and thought that the citizen-complainant was "lucky."  Further, Lt. Elrod wrote, "Sgt. Wright's actions have shown that he has continued his perverted sexual behavior over the years and he has been involved with two different situations that we are aware of currently involving underage citizens."

54.     Lt. Elrod submitted his July 6, 2023 report to Chief Sneed.  Lt. Elrod never heard back from Sneed about Chief Sneed's findings or actions.  Neither Chief Sneed, Johnson, or Petty took any action against Wright and allowed him to continue to patrol, respond to calls, have contact with minors, and have access to the local schools in the Soddy-Daisy community.

55.     On or around September 2023, subpoenas were being issued and served for a criminal trial in which Wright was the lead investigator and arresting officer.  Officers from the SDPD started to receive subpoenas for the trial of *State of Tennessee v. Justin Whaley*, which was a vehicular homicide case and was set for trial in October 2023 before the Honorable Judge Boyd

Patterson, Hamilton County Criminal Court, Division III. Capt. Jenkins received a subpoena to testify at the upcoming *Whaley* trial. And at all relevant times, Capt. Jenkins knew that Wright was the arresting officer in the *Whaley* case.

56. At all material times, Lt. Elrod, Capt. Jenkins, Chief Sneed, Johnson, and Billy Petty knew their obligations under United States Supreme Court precedent including *Brady* and *Giglio*. *Brady* and *Giglio* require law enforcement to disclose both exculpatory and impeachment evidence when such evidence is material to guilt or punishment. These are constitutional obligations and because they are constitutional, such information must be disclosed to Whaley's defense counsel before trial regardless of whether the defendant makes the request for such information. Because Wright was untruthful to Lt. Elrod, his untruthfulness could be impeachment evidence that could have been introduced against Wright at trial. *Brady* and *Giglio* place an affirmative constitutional duty for law enforcement to disclose their internal investigations of their officers to the local District Attorney's office. In fact, during the summer of 2023, the SDPD had selected both Lt. Elrod and Capt. Jenkins to instruct the SDPD as to these constitutional obligations and relied on the Plaintiffs to teach other members of the SDPD how to abide by these constitutional obligations.

57. Understanding their obligation to disclose the Wright investigations to the District Attorney's office, Lt. Elrod approached Chief Sneed several times in September 2023 about disclosing his investigative report about Wright to the Hamilton County District Attorney's Office. Chief Sneed refused to disclose Lt. Elrod's report to the Hamilton County District Attorney's office. Further, a copy of Lt. Elrod's report was not in Wright's personnel file and if Chief Sneed, himself, ever made any findings regarding Lt. Elrod's investigation, those findings were also not included in Wright's personnel file.

58.     Just before the *Whaley* trial in October 2023, Lt. Elrod again asked Chief Sneed whether he could disclose the Wright report to the District Attorney's office.  Chief Sneed responded, and claimed that the city attorney had told him the "complaint didn't hold water, and that if anybody went down there and said that, they would be perjuring themselves."  At no point did Chief Sneed ever advise Lt. Elrod that he had "unfounded" the allegations or made any administrative determination about Wright.

59.     This communication from Chief Sneed to Lt. Elrod put him in fear that he would lose his job and that he could be prosecuted for perjury if he disclosed the Wright investigation to the District Attorney's office.

60.     Capt. Jenkins, also in October 2023 and having received a subpoena to the *Whaley* trial, went to Chief Sneed's office and told Chief Sneed that if he gets asked about Wright's integrity or gets questioned about the investigations into Wright, he will be obligated to disclose Wright's untruthfulness to Lt. Elrod during the internal affairs investigation.

61.     Chief Sneed responded to Capt. Jenkins by leaning back in his chair and saying, "well, if you go down there and say anything like that, I'll call Coty and say you perjured yourself."

62.     Like Lt. Elrod, Capt. Jenkins felt threatened by Chief Sneed with criminal action if he disclosed the investigations into Wright.  He also felt as if his employment with SDPD was being threatened if he disclosed the information about Wright's untruthfulness to the District Attorney's Office prior to the *Whaley* trial.

63.     Ultimately, neither Lt. Elrod nor Capt. Jenkins disclosed Wright's untruthfulness or these two (2) investigations to the District Attorney's Office out of fear that they would lose their jobs and be prosecuted criminally.

64.     The *Whaley* trial occurred in October 2023.  Wright was the arresting officer, was responsible for obtaining a search warrant for Whaley's blood, appeared at the scene and made observations of Whaley including claiming that he smelled alcohol on Whaley and had previously testified at the preliminary hearing as well as at various suppression motions.  Wright testified at trial on behalf of the State of Tennessee.  No information about the Wright investigations or his untruthfulness was disclosed to the State or the defense prior to or during the trial.  Justin Whaley was convicted of several charges.

65.     Chief Mike Sneed eventually retired at the end of 2023 and Billy Petty was promoted to Chief of Police.  Once Chief Petty assumed that role, Capt. Jenkins spoke to him about disclosing the information from the Wright investigations to the DA's office.  Chief Petty also refused to do so.

66.     On February 22, 2024, Lt. Elrod went and spoke to City Manager Burt Johnson about this issue.  Johnson is next in the "chain of command" as he is directly over the Chief of Police and has the ultimate authority to hire and fire employees of the SDPD and other departments within the city of Soddy-Daisy.

67.     Specifically, Lt. Elrod told Johnson that he had tried to convince Chief Sneed to disclose the Wright investigation to the DA's office prior to the *Whaley* trial, but Chief Sneed threatened his job.

68.     Lt. Elrod believed that Johnson would properly disclose this information to the District Attorney's office.

69.     On February 23, 2024, Capt. Jenkins spoke to Johnson about the same matter.  He told Johnson he had concerns about failing to disclose the Wright investigations to the prosecution

prior to the *Whaley* trial. Johnson told Capt. Jenkins that he would think over everything and get back to him.

70.     Approximately one (1) month later, having not heard from Johnson, Lt. Elrod and Capt. Jenkins followed-up with Johnson again on whether he had considered the matter further. Johnson stated he hadn't had time because he was working on the budget.

71.     On March 19, 2024, Lt. Elrod called the Hamilton County District Attorney's office.  Lt. Elrod and Capt. Jenkins asked to have a meeting with him as soon as possible.  A meeting was scheduled for later that day.

72.     Lt. Elrod, Capt. Jenkins and another officer met initially with the Executive Assistant District Attorney, then District Attorney General Coty Wamp was brought into the meeting.

73.     DA Wamp was duly elected to serve the citizens of Hamilton County as the District Attorney General of the Eleventh Judicial District in August 2022 and was at all relevant times, the elected District Attorney General for Hamilton County, Tennessee.

74.     At the meeting, Lt. Elrod gave ADA Loper and DA Wamp a copy of his July 6, 2023 Investigative Report of Sgt. Wright, as well as a flash drive containing the text messages from the first Wright investigation.

75.     Lt. Elrod and Capt. Jenkins further disclosed that they did not come forward with this information before because their jobs had been threatened.  They disclosed that they had exhausted their chain of command by taking all steps necessary before coming to the DA's office including speaking to the former chief, the current chief, and the city manager.

76.     The Plaintiffs expressed to the DA's office that they felt they had no option but to come down and speak to them about this.  They felt they had a duty to disclose this information

under *Brady* and *Giglio* as law enforcement officers in the State of Tennessee, despite the refusal of their chain of command.

77.    When they spoke to the DA's office in March 2024, they told the DA's office that they feared they would be retaliated against for bringing this information forward.

78.    DA Wamp was visibly upset that the information had not been previously provided. She also stated that "Jeremy Wright would never testify in one of her courts again."

79.    Later that day, the DA's office contacted Justin Whaley's defense attorneys to disclose this information, approximately five (5) months after the verdict.

80.    Any reasonable prosecutor in possession of Lt. Elrod's report would have concluded that this information constitutes classic *Brady* and *Giglio* material and conclude that such information should be turned over and disclosed to defense counsel.  Whether such evidence is admissible at trial is a different issue determined by Judge Patterson, but disclosure of this information to the Defendant is constitutionally mandatory under *Brady* and *Giglio*.

81.    On April 12, 2024, Justin Whaley filed a Petition for Writ of Error Coram Nobis in the Hamilton County Criminal Court, asserting primarily that he is entitled to a new trial based on this new evidence regarding Wright's untruthfulness and its potential impact at trial.

82.    Judge Patterson set a hearing on this Petition for April 30, 2024.

83.    Whaley's attorney subpoenaed both Lt. Elrod and Capt. Jenkins to testify at that hearing.

84.    On April 12, 2024, the Chattanoogan released a news article about Whaley's Petition for Writ of Error Coram Nobis.

85. From that point forward, Lt. Elrod and Capt. Jenkins were treated differently and began to be ostracized by the SDPD and administration of the City of Soddy-Daisy including Johnson and Petty.

86. Chief Petty stopped speaking with Capt. Jenkins altogether about any matters relating to the SDPD.

87. Both Lt. Elrod and Capt. Jenkins became increasingly fearful of whether they would have a job if they testified truthfully at the upcoming *Whaley* hearing.

88. On April 26, 2024, Capt. Jenkins had a meeting with Burt Johnson to express his fear of losing his job after his testimony on April 30th.

89. At that meeting, Capt. Jenkins repeatedly expressed his fear that his job was in danger depending on how his testimony went following the *Whaley* hearing.

90. Johnson outwardly admitted to Capt. Jenkins that he was going to have to see "what kind of pressure" would be put on him after the April 30 hearing, and that he honestly couldn't give Capt. Jenkins an answer about whether he should be fearful of his job.

91. Capt. Jenkins expressed firmly that no matter what happened at the April 30 hearing, he wanted to come back to work at SDPD and continue his job.

92. On April 30, 2024, both Lt. Elrod and Capt. Jenkins appeared for the *Whaley* hearing pursuant to defense subpoenas and testified under oath. Mike Sneed testified as well. Present in the courtroom from SDPD and the city of Soddy-Daisy were Burt Johnson, Chief Billy Petty, Jeremy Wright, Mayor Steve Everett, and the Soddy-Daisy City Attorney.

93. During the April 30, 2024 hearing, the Hamilton County District Attorney's office, on the record, advised Judge Patterson that this information about Wright should have been disclosed to the State under *Brady* and/or *Giglio* and should have been turned over the defense

counsel prior to October 2023 trial date. The prosecutor stated during the April 30 hearing, "Certainly the district attorney's office doesn't disagree that the defense was entitled to this information….so I want to, from the outset, say that we don't disagree that they were entitled to the information. It should have been disclosed pretrial. The Court should have had the benefit of that information, as well as the jury."

94. During the coram nobis hearing, Judge Patterson ruled that the defense was entitled to both investigations into Wright including the text messages discovered by Hamilton County Sheriff's Office. Judge Patterson continued the case to May 29, 2024. Any reasonable Court would have concluded that the information regarding both of Wright's investigations should be disclosed to defense counsel.

95. Following the hearing on April 30, 2024, Mike Sneed returned to the SDPD and consulted with officials from the SDPD including Chief Petty and Burt Johnson. Upon information and belief, Sneed, Petty, Johnson and/or other officials of the SDPD conspired, confederated and agreed to take administrative action against the Plaintiffs just hours after they testified in retaliation for their testimony.

96. Within hours of their testimony on April 30, 2024, Chief Petty called both Lt. Elrod and Capt. Jenkins to his office separately. Each were given an email addressed to Chief Petty from Burt Johnson, notifying Lt. Elrod and Capt. Jenkins that they were "suspended with pay" pending an investigation due to their testimony at the Whaley hearing on April 30. Petty and Johnson stripped both Plaintiffs of their guns, their patrol cars, and their badges. Chief Petty told both Plaintiffs to not come to the SDPD until they were told otherwise.

97.     Upon information and belief, Chief Petty, Johnson and former Chief Sneed told employees of the SDPD to not communicate with Lt Elrod and Capt. Jenkins about any "police-related matters."

98.     Their suspension was in direct relation to their sworn testimony on April 30, 2024.

99.     On May 29, 2024, Judge Patterson re-convened the coram nobis hearing in *Whaley*. Lt. Elrod and Capt. Jenkins testified as well as Mike Sneed.

100.     Sneed testified that he made a decision to "unfound" the allegation(s) against Wright. Sneed failed to document this alleged administrative finding. Sneed offered no explanation for why his decision to "unfound" was not in writing or documented anywhere.

101.     What is documented are undated typed-up notes that Chief Sneed brought with him to the hearing. The notes do not state that the investigation(s) into Wright were "unfounded." Sneed further testified that when he was made aware of the Coram Nobis petition, he "notified Chief Petty of where the file folder on all this was kept." He offered no justification for why these investigations were not kept in Wright's personnel file.

102.     SDPD administration and the city of Soddy-Daisy officials including Johnson and/or Petty were also present for this hearing. Johnson watched their May 29 testimony.

103.     On July 18, 2024, Hamilton County Criminal Court Judge Boyd Patterson granted Justin Whaley's Petition for Writ of Error Coram Nobis, *in part*, based on the testimony from Lt. Elrod and Capt. Jenkins. Specifically, Judge Patterson found that the "combined testimony provided by Lt. Elrod and Capt. Jenkins (regarding Wright) certainly qualifies as admissible impeachment evidence… and ***carries significant credibility***." (emphasis added).

104.     The Court further found that "the newly discovered impeachment evidence (a) existed, but was not ascertained at the time of Defendant's trial, (b) admissible as impeachment

evidence against Sgt. Wright and (c) coming from two high-ranking SDPD officers who worked with Sgt. Wright, credible."

105. Finally, the Court found

> "[A]long with credibility, the newly discovery evidence involves a major fracture with the SDPD regarding whether the internal investigations on Sgt. Wright were wrongly deemed unfounded. This indisputable rift invokes the arguable possibility that SDPD did not hold Sgt. Wright to the appropriate standards of care. Again, while Chief Sneed provided rational explanations why the internal investigations were deemed unfounded, the "disturbing" nature of the newly discovered evidence may have caused the jury to come to a different conclusion about the chain of custody's evidentiary weight."

106. On July 18, 2024, Whaley was granted a new trial based upon SDPD illegal and unconstitutional decision to hide and cover up Wright's two (2) investigations which should have been disclosed to defense counsel before trial. The Defendants' conduct in refusing to disclose this information about Wright has caused considerable embarrassment to the City of Soddy-Daisy and its police department. Rather than admit their mistake, the Defendants have begun an offensive campaign to smear, tarnish and destroy the reputation and credibility of the Plaintiffs.

107. On July 31, 2024, just days later, Soddy-Daisy, Chief Petty, and Johnson terminated Lt. Elrod and Capt. Jenkins via written letter.

108. Lt. Elrod and Capt. Jenkins were terminated for allegedly violating the following Soddy-Daisy policy provisions: Misrepresentation and Falsification, Insubordination, and Conduct toward the Public and other Law Enforcement Officers.

109. The letter authored by Burt Johnson ties the basis of the termination for both Lt. Elrod and Capt. Jenkins to their disclosure of the Wright investigation to DA Wamp, an elected official, and their subsequent testimony about those investigations before Judge Patterson, another elected official, in the following ways:

a. Johnson alleges their testimony on April 30th constitutes misrepresentation and falsification.

b. Johnson alleges insubordination because Elrod and Jenkins "insubordinately ignored Chief Sneed's determination (regarding the Wright investigation), and eventually took the matter to the district attorney, a decision that was not yours to make."

c. Johnson alleges that Lt. Elrod and Capt. Jenkins did not respect the chain of command when he disclosed the Wright information to the DA.

110. Despite the prosecution's position before Judge Patterson that law enforcement had a constitutional duty to disclose these investigations of Wright under *Brady* and/or *Giglio* and Judge Patterson's ruling that these investigations "certainly qualifies as admissible impeachment evidence," the City of Soddy-Daisy and these Defendants refuse to acknowledge these conclusions and continue their attempts to cover up their misconduct.

111. The City of Soddy-Daisy has a policy, custom and practice of refusing to properly document and keep proper records of internal affairs investigations in a SDPD officer's personnel file. This, of course, prevents the public from obtaining copies of those internal investigations in a public records request. It also prevents attorneys from obtaining copies when they make routine requests of the department for an officer's personnel file. It further frustrates the duties that prosecutors have in disclosing such information to Defendants.

112. The City of Soddy-Daisy, Johnson, Petty, and Sneed also have a policy, custom and practice of closing an investigation as "unfounded" without proper documentation so that they can claim that the investigation does not have to be included in any personnel, human resources, or training file at the SDPD. Moreover, their policy, custom and practice frustrates and conflicts with their constitutional duties under *Brady* and *Giglio*. Merely because law enforcement make an administrative decision that an allegation is unfounded, such a finding does not mean that the

allegation should not be disclosed to the District Attorney's office or that the allegation is not *Brady* or *Giglio* material.

113. Further, it is well known that the City of Soddy-Daisy is highly political. Those with authority in Soddy-Daisy have a certain amount of political power within the community. This includes those who are strategically appointed to run the SDPD. That power is then used to silence officers and threaten them from coming forward about the bad acts of other officers like Wright or their superiors within the SDPD. Threats of damage to reputation and political survivability have been communicated to officers including the Plaintiffs in an attempt to force them to "get in line" and "stay in their lane." This has been the unconstitutional policy, custom and practice in the SDPD for years and is presently the custom, as can be seen in the foregoing 112 paragraphs.

**FOIA Request**

114. On July 31, 2024, counsel for the Plaintiffs requested the full investigative file into the Plaintiffs from the Soddy-Daisy City Attorney.

115. In response, the Soddy-Daisy City Attorney claimed that a large part of the "investigation" involved documents the Plaintiffs already had possession of, including the Wright investigations and the *Whaley* Coram Nobis transcripts. Counsel for the Plaintiffs is independently aware that several officers of the SDPD had been interviewed as part of an "investigation" following the April 30th *Whaley* hearing.

116. However, the City Attorney claimed that there was an "independent investigation" conducted by Mike Aldridge into matters, but that Mr. Aldridge was hired "in anticipation of litigation and, therefore, his report and everything associated with it is protected by privilege."

117. Counsel for the Plaintiffs then filed a Freedom of Information Act Request for said investigative file along with the training and personnel files of the Plaintiffs. To date, Soddy-Daisy has refused to provide such documents to the Plaintiffs and asserted privilege preventing the Plaintiffs from reviewing the Defendants' actions in this case.

118. Internal affairs investigations are a common public record available to any citizen in the State of Tennessee. However, in Soddy-Daisy, the rules appear to be different.

**Other Retaliatory Action:**

119. Following their termination, the Plaintiff(s) have attempted to find other employment. And to further their campaign to harm the Plaintiffs, officials from Soddy-Daisy have contacted other potential employers of the Plaintiff or Plaintiff(s) and caused the potential employers to rescind job offers to the Plaintiff or Plaintiff(s) and materially interfered with their future employment.

## CAUSES OF ACTION

### *I. Count One – Violation of 42 U.S.C. §1983 (against Burt Johnson only)*

120. The allegations in Paragraphs 1-119 are incorporated herein by reference.

121. Pursuant to 42 U.S.C. §1983, City Manager Burt Johnson acted under color of law and deprived the Plaintiffs of their First Amendment rights to the freedom of speech. Plaintiffs bring a claim against the above-named official individually, as well as in his official capacity, pursuant to 42 U.S.C. § 1983.

122. 42 U.S.C. § 1983 provides the Plaintiffs with a federal cause of action against Burt Johnson because he retaliated against the Plaintiffs when they exercised their right to speak as citizens of Hamilton County about a matter of public concern, i.e. the illegal and corrupt actions

of Wright and the efforts of the SDPD and the city of Soddy-Daisy to cover those actions up, no matter the cost.

123. The Plaintiffs, in speaking out about the two (2) investigation(s) into Wright, the threats to their jobs that they endured when they felt obligated to disclose these investigations, and their ultimate decision to disclose the investigations to the DA and provide truthful testimony subject to a subpoena, spoke on a matter of public concern as citizens of Hamilton County and the Eastern District of Tennessee.

124. The Defendants do not possess a legitimate interest that outweighs the importance of a public employee's right to speak about his belief that the actions of his employer violate the law.

125. The Plaintiffs' speech to their elected official, DA Coty Wamp, as well as their testimony subject to a subpoena before the Honorable Judge Boyd Patterson at both the April 30 and May 29, 2024 *Whaley* hearings were substantial and motivating factors in their termination from the Soddy-Daisy Police Department on July 31, 2024.

126. Because their constitutional rights to free speech were violated, the Plaintiffs have suffered damages and are entitled to compensatory damages, economic damages, non-economic damages, punitive damages, and attorney's fees pursuant to 41 U.S.C. § 1988.

***II. Count Two – Violation of 42 U.S.C. §1983 (against City of Soddy-Daisy only)***

127. Plaintiffs reallege and reincorporates by reference the factual allegations contained in Paragraphs 1-126 herein by reference.

128. The City of Soddy-Daisy, a municipality, can be liable under 42 U.S.C. §1983 if there is a well-settled policy, custom, or practice that was the moving force behind the Plaintiffs'

constitutional theory or if an individual with final policymaking authority for the municipality caused the constitutional deprivation.

129. Within the City of Soddy-Daisy, there is a commonly held belief that the bad acts of its police department get swept under the rug. This is routinely done through the directive of "unfounding" an investigation so that it does not end up in an officer's personnel file.

130. The City of Soddy-Daisy has furthered this policy, custom, or practice by promoting chiefs from within the department who have self-proclaimed "political power" within the city of Soddy-Daisy. This political power is then exercised to silence the speech of its employees and discouraging them from speaking with their others outside the city administration (like their elected officials) about the bad actions some officers in the Department that are going unreported.

131. City Manager Burt Johnson is the policymaking official of the City of Soddy-Daisy. Burt Johnson, as City Manager, is the administrative head of the city government. His authority includes appointment, supervision, and removal of the Department heads of the City.

132. Pursuant to Chapter 21, Section 6-21-102 of the City of Soddy-Daisy Municipal Charter, the City Manager's authority is enumerated as follows:

**Subordinate Officers and Employers:**

> (a) The city manager may appoint, promote, suspend, transfer, and remove any officer or employee of the city responsible to him; or he may, at his discretion, authorize the head of a department or office responsible to him to take such actions regarding subordinates in such department or office.

133. Pursuant to Chapter 21, Section 6-21-108 of the City of Soddy-Daisy Municipal Charter, the City Manager's powers and duties (in part) are as follows:

> (1) To see that the laws and ordinances are enforced, and upon knowledge or information of any violation thereof, to see that prosecutions are instituted in city court;
>
> (2) Except as otherwise provided in this charter, appoint, promote, demote, suspend, transfer, remove, and otherwise discipline all department heads and subordinate employees at any time, subject only to any personnel rules and regulations adopted by ordinance or resolution of the commission.

134. As the policymaker and the individual with the authority to hire and fire officers, City Manager Burt Johnson is directly responsible for the decision to terminate the Plaintiffs in response to their communications with DA Coty Wamp and due to their testimony at the April 30th and May 29th hearings.

135. Because the policymaker for the City of Soddy-Daisy is one of the individuals who deprived the Plaintiffs of their Constitutional rights to the freedom of speech, the City of Soddy-Daisy is liable for the actions City Manager under 42 U.S.C. § 1983.

136. The Plaintiffs have suffered damages as a result of this deprivation and are entitled to compensatory damages, economic damages, non-economic, punitive damages and attorney's fees pursuant to 42 U.S.C. §1988.

***III. <u>Count Three – Civil Conspiracy to Violate 42 U.S.C. § 1983 (against all Defendants)</u>***

137. The allegations in Paragraphs 1-136 are incorporated herein by reference.

138. Pursuant to 42 U.S.C. § 1983, the Defendants acted under color of law to conspire, confederate and agree to deprive the Plaintiffs of their constitutional rights to the freedom of speech under the First Amendment to the United States Constitution.

139. Plaintiffs bring this cause of action against Defendants Johnson and Petty and Sneed in their individual and official capacities as well as against the City of Soddy-Daisy. Plaintiffs bring this cause of action against Mike Sneed in his individual capacity.

140. The co-conspirators took one (1) or more overt acts in furtherance of the conspiracy including, but not limited to:

a. Threatening the jobs of the Plaintiffs to silence them from disclosing constitutional *Brady/Giglio* material to the Prosecution and Defense prior to the *Whaley* trial.

b. Overt acts to place the Plaintiffs in fear of retaliation if they testified truthfully at the *Whaley* hearing on April 30th.

c. Placing the Plaintiffs on suspension with pay and under investigation due to their testimony while they were still under subpoena, threatening their further testimony at the subsequent *Whaley* hearing on May 29th.

d. Terminating the Plaintiffs for disclosing the *Brady/Giglio* material to the DA's office and testifying truthfully about the same.

141. The Plaintiffs have suffered damages as a result of these and other overt acts of the Defendants are entitled to compensatory damages, economic damages, non-economic, punitive damages and attorney's fees pursuant to 42 U.S.C. §1988.

***IV. Count Four – Violation of Tennessee Public Protection Act (against City of Soddy-Daisy and Burt Johnson only)***

142. The allegations in Paragraphs 1- 141 are incorporated herein by reference.

143. Pursuant to T.C.A. § 50-1-304 (codified as the "Tennessee Public Protection Act" or "TPPA"), it is the public policy of this State that at-will employees may not be discharged solely for refusing to remain silent and/or refusing to participate in the illegal activities of its employer.

144. The Plaintiffs bring this cause of action against the City of Soddy-Daisy and Burt Johnson in both his official and individual capacity.

145. Lt. Elrod and Capt. Jenkins refused to remain silent about and participate in the illegal activities of their SDPD administration and their employer, the City of Soddy-Daisy. In response, they were terminated.

146. The duty of the State to provide evidence in a criminal case that is favorable to the defendant is a fundamental and constitutional one. The State violates the defendant's constitutional right to due process under the United States and Tennessee Constitutions if it fails to disclose favorable evidence to the defense under *Brady* and/or *Giglio*.

147. This fundamental duty to disclose extends to law enforcement, as an arm of the state. By refusing to disclose this *Brady* and/or *Giglio* material, the SDPD was committing illegal activities as defined by T.C.A. § 50-1-304.

148. Further, Lt. Elrod and Capt. Jenkins reasonably believed they could be subject to criminal liability if they were aware of favorable evidence and/or impeachment evidence to the defense in the *Whaley* case and failed to disclose it, in violation of a defendant's constitutional rights under the United States and Tennessee Constitutions.

149. Burt Johnson affirmed that reasonable belief in the April 26, 2024 meeting when asked if he knew Lt. Elrod and Capt. Jenkins could be held criminally liable if they did not disclose this information to the District Attorney's Office. He indicated that he did know that.

150. Lt. Elrod and Capt. Jenkins were terminated because of their disclosure of this information to the District Attorney General's Office, i.e. their refusal to remain silent about and continue to participate in the illegal cover up of Wright's actions in violation of the constitutional rights of criminal defendants – the illegal activities of their employer.

151. The Plaintiffs have suffered damages as a direct result from this violation and are entitled to compensatory damages, economic damages, non-economic damages, treble damages, punitive damages, and attorney's fees.

***V. Count Five – Civil Conspiracy to violate the Tennessee Public Protection Act (against all Defendants)***

152. The allegations contained in Paragraphs 1-151 are incorporated herein by reference.

153. Defendants Johnson, Petty, Sneed and the City of Soddy-Daisy conspired, confederated and agreed to a common design to retaliate against the Plaintiffs in violation of the Tennessee Public Protection Act (TPPA).

154. In furtherance of this conspiracy, each defendant committed certain overt acts including, but not limited to:

a. Threatening the jobs of the Plaintiffs to silence them from disclosing constitutional *Brady/Giglio* material to the Prosecution and Defense prior to the *Whaley* trial.

b. Overt acts to place the Plaintiffs in fear of retaliation if they testified truthfully at the *Whaley* hearing on April 30th.

c. Placing the Plaintiffs on suspension with pay and under investigation due to their testimony while they were still under subpoena, threatening their further testimony at the subsequent *Whaley* hearing on May 29th.

d. Terminating the Plaintiffs for disclosing the *Brady/Giglio* material to the DA's office and testifying truthfully about the same.

155. The Plaintiffs have suffered injuries as a result of these and other overt acts of the Defendants and are entitled to damages, economic damages, non-economic damages, punitive damages and attorney's fees.

***VI. Count Six – Violation of the Tennessee Public Employee Political Freedom Act (against City of Soddy-Daisy and Burt Johnson only)***

156. The allegations contained in Paragraphs 1-155 are incorporated herein by reference.

157. Pursuant to T.C.A. § 8-50-603 (codified as the "Tennessee Public Employee Political Freedom Act" or "PEPFA"), it is unlawful for any public employer to discipline, threaten to discipline, or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official.

158. The Plaintiffs bring this cause of action against the City of Soddy-Daisy and Burt Johnson both in his official and individual capacity.

159. Lt. Elrod and Capt. Jenkins communicated with DA Coty Wamp, an elected public official, and testified before the Honorable Judge Boyd Patterson, another elected official, concerning matters of potential corruption by the City of Soddy-Daisy and the SDPD attempting to cover up the bad actions of Wright in violations of a defendant's constitutional rights under *Brady* and *Giglio*.

160. Burt Johnson and the City of Soddy-Daisy, knew of these communications with the District Attorney's Office and the testimony before Judge Patterson prior to the Plaintiffs' termination on July, 31, 2024.

161. Johnson wrote the termination letter to both Plaintiffs which indicated that the Plaintiffs' communications with DA Coty Wamp and their testimony before the Honorable Judge Boyd Patterson regarding the Wright investigations were a substantial factor in Johnson's decision to terminate the Plaintiffs.

162. The Plaintiffs have suffered damages as a direct result from this violation and are entitled to compensatory damages, economic damages, non-economic damages, treble damages, punitive damages, and attorney's fees.

***VII. Count Seven – Civil Conspiracy to violate the Tennessee Public Employee Political Freedom Act (against all Defendants)***

163. The allegations contained in Paragraphs 1-162 are incorporated herein by reference.

164. Defendants Johnson, Petty, Sneed and the City of Soddy-Daisy conspired, confederated and agreed to a common design to terminate the Plaintiffs because they disclosed the Wright investigation(s) to the Hamilton County District Attorney's Office and testified about the Wright investigation(s) before the Honorable Judge Boyd Patterson.

165. In furtherance of this conspiracy, each defendant committed certain overt acts including, but not limited to:

a. Threatening the jobs of the Plaintiffs to silence them from disclosing constitutional *Brady/Giglio* material to the Prosecution and Defense prior to the *Whaley* trial.

b. Overt acts to place the Plaintiffs in fear of retaliation if they testified truthfully at the *Whaley* hearing on April 30th.

c. Placing the Plaintiffs on suspension with pay and under investigation due to their testimony while they were still under subpoena, threatening their further testimony at the subsequent *Whaley* hearing on May 29th.

d. Terminating the Plaintiffs for disclosing the *Brady/Giglio* material to the DA's office and testifying truthfully about the same.

166. The Plaintiffs have suffered injuries as a result of these and other overt acts of the Defendants and are entitled to damages, economic damages, non-economic damages, punitive damages and attorney's fees.

***VIII. Count Eight – Vicarious Liability/Respondeat Superior***

167. The allegations contained in Paragraphs 1-166 are incorporated herein by reference.

168. Plaintiffs submit and aver that the City of Soddy-Daisy, as principal, is liable for any and all acts and/or omissions, negligent, intentional or otherwise, that were performed or committed by their agents and/or employees including but not limited to Johnson, Petty, Sneed and others and pursuant to the doctrine of vicarious liability and/or the doctrine of *respondeat superior*.

***IX. Count Nine - Punitive Damages (against all Defendants)***

169. The allegations contained in Paragraphs 1-168 are incorporated herein by reference.

170. Plaintiffs aver that the Defendants' conduct is reckless, knowing, and intentional and entitles them to punitive damages in an amount to be determined by a Jury.

***X. Count Ten – Permanent Injunction (against City of Soddy-Daisy only)***

171. The allegations contained in Paragraphs 1-170 are incorporated herein by reference.

172.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs move the Court for a permanent injunction against the City of Soddy-Daisy.  Plaintiffs request that the permanent injunction require the City of Soddy-Daisy and the SDPD to properly document each and every internal investigation of their officers such that the public and prosecutors can easily ascertain the investigation history of a Soddy-Daisy officer to determine whether such information should be released or disclosed under applicable State and Federal laws and appoint an third-party administrator to monitor compliance with such injunction at a cost paid for by the City of Soddy-Daisy.

173.     Plaintiffs and the public have suffered an irreparable injury.

174.     There are remedies available at law that are inadequate to compensate the Plaintiffs the public from further harm or future injury.

175.     That considering the balance of hardships between the Plaintiffs and Defendants, a remedy in equity is warranted.

176.     The public interest would not be disserved by a permanent injunction.

**WHEREFORE PREMISES CONSIDERED,** the Plaintiffs pray for the following:

a.     That Defendants be served a copy of this Complaint and be required to answer within the time prescribed by the *Federal Rules of Civil Procedure*;

b.     That a Jury be empaneled to determine the issues;

c.     That the Court award the Plaintiffs back pay and benefits;

d.     That the Court award all front pay and benefits;

e.     That the Court award further compensatory damages to include any economic and non-economic damages for each plaintiff in the amount of $1,000,000.00 each;

f. That the Plaintiffs be awarded treble damages, punitive damages, and/or nominal damages pursuant to 42 U.S.C. § 1983, §1988, T.C.A. § 8-50-603 in an amount to be determined by a jury;

g. That the Court award attorney's fees pursuant to 42 U.S.C. § 1983, § 1988, T.C.A. §8-50-603, § 50-1-304 and other applicable law;

h. That the Court assess all discretionary and non-discretionary costs and both pre and post-judgment interest against the Defendants;

i. That the Court enter a Permanent Injunction requiring Soddy-Daisy to properly document each and every internal investigation of their officers such that the public and prosecutors can easily ascertain the investigation history of a Soddy-Daisy officer to determine whether such information should be released or disclosed under applicable State and Federal laws and appoint an third-party administrator to monitor compliance with such injunction at a cost paid for by the City of Soddy-Daisy. Further, Plaintiffs reserve the right to amend this request for a permanent injunction to include relief consistent with their claims and the acts and omissions alleged herein which prevent the Defendants from acting in a similar or like manner in the future;

k. Any other further and general relief to which the Plaintiffs would be entitled in the premises.

** Signatures to follow**

Respectfully submitted,

**DAVIS & HOSS, PC**

By**:   /s/ Janie Parks Varnell**
   Janie Parks Varnell, BPR #031256
   Edith Logan Davis, BPR # 038138
   *Attorneys for the Plaintiff*
   850 Fort Wood Street
   Chattanooga, TN 37403
   (423) 266-0605
   (423) 266-0687 – Fax
   janie@davis-hoss.com
   logan@davis-hoss.com